UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HEARN, CDCR# AS-7111,<br><br>         Plaintiff,<br><br>vs.<br><br>RJD WARDEN, E. FRIJAS, M. POLLARD, JOHN DOE 1 to 8,<br><br>         Defendants. | Case No.: 3:22-cv-00255-TWR-AGS<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; (2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A.**<br><br>**(ECF No. 2)** |

William Hearn ("Plaintiff" or "Hearn"), currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), and proceeding pro se, has filed this civil action pursuant to 42 U.S.C. § 1983. (The "Compl.," *see* ECF No. 1.) Hearn has not paid the $402 civil filing fee; instead, he has filed a Motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (*See* ECF Nos. 2, 4.) Hearn alleges his First and Eighth Amendment rights were violated by Defendants. (*See generally* Compl.)

**I. Motion to Proceed i*n forma pauperis***

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed *in forma pauperis* remains obligated to pay the entire fee in increments or "installments," regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015).

Section 1915(a)(2) requires prisoners seeking leave to proceed *in forma pauperis* to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

In support of his Motion to Proceed *in forma pauperis*, Plaintiff has submitted a copy of his CDCR inmate trust account statement and prison certificate. *See* ECF No. 4; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. This statement shows that in the six months preceding filing, Plaintiff has had average monthly deposits

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

of $20.00 and an average monthly balance of $1,054.67.  *See* ECF No. 4 at 1.  At the time of filing, he had $278.41 on account at RJD.  *Id.*

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed *in forma pauperis* (*see* ECF No. 2) and assesses an initial partial filing fee of $210.93 pursuant to 28 U.S.C. Section 1915(b)(1).  The Court directs the Secretary of the CDCR, or his designee, to collect this initial filing fee only if sufficient funds are available in Plaintiff's account at the time this Order is executed.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. Section 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").  The Court further directs the Secretary of the CDCR, or his designee, to collect remaining balance of the $350 total fee owed in this case as required by 28 U.S.C. Section 1914 and to forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section 1915(b)(1).

**II.   Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B) & 1915A**

  *A. Standard of Review*

Because Hearn is a prisoner and is proceeding *in forma pauperis*, his Complaint requires a preliminary screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must review and *sua sponte* dismiss an *in forma pauperis* complaint, and any complaint filed by a prisoner seeking redress from a governmental entity, or officer or employee of a governmental entity, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d

903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Allegations

Hearn alleges his First and Eighth Amendment rights were violated by Defendants. (*See generally* Compl.) Hearn states that he wears hearing aids which at the time of the events in question had not been working properly. (*See* Compl. at 3.) He claims he complained to prison staff about the hearing aids and about his lack of access to the mental health EOP program and was "lashing out at building 15 staff . . . [in order] to get a program Sgt. [to] come talk to him." (*See id.* at 3–4.) Between March 2021 and April 27, 2021, Hearn alleges he reported being retaliated against "for his behavior and for complaining to the ADA Sgt." (*See id.* at 4.)

On April 15, 2021, he got into an argument with the building 15 officer. (*See id.*) Hearn could not understand what the officer was saying, and the officer would not allow Hearn to read his lips. (*See id.*) Hearn told the officer, "Fuck, what you're talking about dude, I'll talk to the Sgt. at yard time." (*See id.*) Hearn alleges a John Doe, the second watch control officer for building 15, then retaliated against him by crushing his hand in the cell door and refusing to open it for ten minutes. (*See id.*) According to Hearn, other building 15 floor officers, who Hearn identifies only as "John Doe 1 to 8," "were negligent of duty by their lack of alertness and by retaliating against plaintiff." (*See id.*) Following this incident, the control tower Doe allegedly told Hearn, "[h]opefully this will teach you to stop snitching on staff," and Hearn claims Does 1 to 8 laughed at him, refused to provide him medical treatment, and said "[h]opefully now you learn to mind your business" and that if he continued to complain, "next time it might be [your] head." (*See id.*)

Hearn claims he was not taken to the emergency room after he was injured. (*See id.* at 5.) He further alleges he repeatedly requested medical attention from April 16, 2021 until April 20, 2021. (*See id.*) On April 29, 2021, Hearn claims "a nurse not wearing a name tag told Plaintiff if he [filed a] 602 medical [grievance] that Dr. Michael L Pomerantz, MD, would not give him medical care or treatment" on two occasions. (*See id.*) According to Hearn, he was not treated for his injury until June 10, 2021. (*See id.*) On November 15, 2021, he was told his injury required surgery. (*See id.* at 6.) Hearn claims he was still waiting for a third surgery to be performed on his hand on February 12, 2022. (*See id.*) He also claims he has a "life-long hand disability and damage." (*See id.* at 4.)

Hearn alleges that the Warden of RJD, and defendants Frijas and Pollard, all retaliated against him for filing a grievance. He also claims he did not file a 602 regarding his medical treatment because he was afraid Defendants would retaliate against him by restricting his access to medical treatment. (*See id.* at 6.) Based on the described events, Hearn alleges that his First and Eighth Amendment rights were violated by Defendants. (*See generally* Compl.)

/ / /

*1. 42 U.S.C. § 1983*

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both, (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

*2. Eighth Amendment*

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "Inadvertent failures to provide adequate medical care, mere negligence or medical

malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105–07; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Rather, "[t]o 'show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) quoting *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). "[A] purposeful act or failure to respond to a prisoner's pain or possible medical need," which causes harm is sufficient to establish deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

### i.   RJD Warden, Frijas, and Pollard

With respect to RJD's Warden, and defendants Frijas and Pollard, Plaintiff fails to state a plausible Eighth Amendment claim for relief because he fails to include specific factual allegations which describe how or when these officials were personally involved in either the April 15, 2021 hand crushing incident or the subsequent failure to provide medical care. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to ... § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim). "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v.*

*Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim.").

As currently pleaded, Hearn's Complaint offers no factual detail from which the Court might reasonably infer a plausible Eighth Amendment claim on the part of the Warden, Frijas or Pollard. (*See generally* Compl.) Hearn claims generally that RJD Warden and Pollard both "had fiduciary duties" to carry out state and federal law, that RJD Warden had a duty to "protect, keep safe does under his/her custody and to "train, supervise and investigate," and that M. Pollard had a duty to "uphold Title 15." (*See* Compl. at 9.) But violations of state or local law or prison regulations cannot be remedied under Section 1983 unless they also violate a federal constitutional or statutory right. S*ee Davis v. Scherer*, 468 U.S. 183, 192 (1984). Supervisory officials may only be held liable under § 1983 if Plaintiff alleges their "personal involvement in the constitutional deprivation, or … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011). Hearn makes no such allegations in his Complaint. Moreover, the only allegations involving Frijas are that he refused to give: (1) Hearn the names of the correctional officer working the control tower, and (2) the name of the staff who were witnesses and did not stop the hand crushing incident. (*See* Compl. at 5.)

Therefore, the Court dismisses Hearn's Eighth Amendment claims against RJD Warden, Pollard, and Frijas *sua sponte* based on Hearn's failure to state a plausible Eighth Amendment claim against them. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); *Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004; *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570).

                ii.   Does 1 to 8

Hearn alleges that "defendant John Doe 2nd watch control officer" crushed his hand in a cell door for over ten minutes in retaliation for getting into a verbal disagreement with

the building 15 officer. (*See* Compl. at 4.) He further alleges that "John Does 1 to 8 laugh[ed] at Plaintiff and refused to give him medical treatment or care" after his hand was crushed. (*See id.*) These actions resulted in Hearn having "life-long hand disability and damage," and needing to undergo several surgeries to repair the damage to his hand. (*See id.* at 4–6.) This is sufficient to state a plausible Eighth Amendment claim against and Does 1 to 8. *Iqbal*, 662 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570)[2]; *see Jett*, 439 F.3d at 1096 n.1 (finding prisoners fractured thumb was a serious medical need and that prison doctors' six-month delay in having thumb set in a case caused harm sufficient to state an Eighth Amendment claim).

### 3. *First Amendment Retaliation*

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim

---

[2] Plaintiff must identify Does 1 to 8 and substitute their true names in an amended pleading before the United States Marshal will be ordered and/or able to execute service upon them. *See Aviles v. Village of Bedford Park*, 160 F.R.D. 565, 567 (1995) (Doe defendants must be identified and served within [90] days of the commencement of the action against them); Fed. R. Civ. P. 15(c)(1)(C) & 4(m). Generally, Doe pleading is disfavored, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and in most instances it is impossible for the United States Marshal to serve a party identified only as a Doe. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant."); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant."). However, the Court will not dismiss Does 1 to 8 as Defendants at this time because where the identity of an alleged party is not known prior to filing of an action, Ninth Circuit authority permits Plaintiff the opportunity to pursue appropriate discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity, or his pleading requires dismissal for other reasons. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

### i. Does 1 to 8

Hearn also alleges that Does 1 to 8 retaliated against him for complaining about his broken hearing aids and lack of access to the EOP mental health program by crushing his hand in a cell door for more than ten minutes. (*See* Compl. at 3–5, 7.) After his hand was crushed, he also claims unidentified correctional officers Does 1 to 8 told him: "[h]opefully this will teach you to stop snitching on staff;" "[h]opefully you [will] learn to mind your business" and, "[k]eep complaining [and] next time it might be [your] head." (*See id.* at 7.) These allegations are sufficient to state a plausible retaliation claim against Does 1 to 8. Hearn alleges a state actor took an adverse action against him (crushing his hand in a cell door) because of his protected conduct (filing a 602 and complaining about broken hearing aids and lack of access to mental health services). *See Rhodes*, 408 F.3d at 567–68. Further, Hearn plausibly alleges the physical harm inflicted by Does 1 to 8 chilled the exercise of his First Amendment rights and did not reasonably advance a legitimate correctional goal. *See id.* at n. 11 ("[H]arm that is more than minimal will almost always have a chilling effect.").[3]

### ii. RJD Warden, Frijas, and Pollard

Hearn also claims RJD Warden, Frijas, and Pollard "refused to give [him] the name of the correctional officer[s] working the control tower, [the] floor and [who] responded to the code, [and] they refused to identify staff to prevent plaintiff from filing a lawsuit naming employees by name." (*See* Compl. at 5.) These acts, he alleges, were in "retaliation

---

[3] *See* footnote 2.

for filing 602 and for Plaintiff pushing to get medical treatment." (*See id.*)  The allegations are sufficient to state a plausible retaliation claim against RJD Warden, Frijas, and Pollard because they allege these defendants took some adverse action against Hearn (refused to identify the correctional officers who injured him) because of his protected conduct (his filing of prison grievances and staff complaints), that such action chilled Hearn's exercise of his First Amendment rights, and did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567–68, n. 11; *see also Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (noting the 9th Circuit has "long recognized that a correctional officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct.").

### III.  Leave to Amend

While the Court has dismissed some of Plaintiff's claims, it must also grant Plaintiff leave to amend them–if he can.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### IV.  Conclusion and Order

Based on the foregoing, the Court:

1) **GRANTS** Plaintiff's Motion to Proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a).

2) **DIRECTS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's trust account the initial filing fee assessed by this Order, if those funds exist at the time this Order is executed, and thereafter to garnish the remainder of the $350 filing fee owed in this case by assessing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2).  ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY

THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's Eighth Amendment claim against Defendants RJD Warden, Frijas, and Pollard *sua sponte* for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

6) **GRANTS** Plaintiff forty-five (45) days leave from the date of the electronic docketing of this Order in which to either: (1) file a Notice of Intent to Proceed with his Eighth Amendment claim against Defendants Does 1 to 8 and his First Amendment retaliation claim against RJD Warden, Frijas, Pollard, and Does 1 to 8 only; or (2) file an Amended Complaint correcting all the deficiencies of pleading identified by the Court in this Order.

If Plaintiff chooses to proceed as to his Eighth Amendment claim against Defendants Does 1 to 8 and his First Amendment retaliation claim against RJD Warden, Frijas, Pollard, and Does 1 to 8 only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendants RJD Warden, Frijas, and Pollard. Plaintiff may then seek to pursue appropriate discovery to identify the unknown Does. *See Wakefield v. Thomas*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at 642).

If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, his Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). Plaintiff's Amended Complaint must be captioned as his "First Amended Complaint," contain S.D. Cal. Civil Case No. 22-cv-00255-TWR-AGS in its caption, and comply both with FED. R. CIV. P. 8 and with S.D. CAL. CIVLR 8.2.a.

1 | The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy
2 | of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for Plaintiff's use and
3 | to assist him in amending should he choose to do so.
4 | **IT IS SO ORDERED**.
5 | Dated:  June 13, 2022

_____
Honorable Todd W. Robinson
United States District Judge