UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM HEARN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>WARDEN, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 22-cv-255-AGS-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>[Dkt. No. 77] |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Andrew G. Schopler pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3. Plaintiff William Hearn, an inmate at Richard J. Donovan Correctional Facility ("RJD"), is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges Defendants violated his First and Eighth Amendment rights. *See generally* Dkt. No. 53. Before the Court is a Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion to Dismiss") by Defendants E. Frijas, M. Pollard (also sued as "Warden," but this Report and Recommendation will refer to him only as "Pollard"), J. Cepeda, L. Alfaro, and S. Bravo-Mancilla (collectively "Defendants"). Dkt. No. 77. For the reasons stated below, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendants' Motion to Dismiss.

# I.
# BACKGROUND

**A.    Procedural History**

Plaintiff filed his initial complaint on February 24, 2022, alleging violations of his rights under the First and Eighth Amendments. Dkt. No. 1. Specifically, Plaintiff alleged Defendants used excessive force against him, denied him adequate medical care for his resulting injuries, and retaliated against him for submitting grievances related to these incidents. *See generally id.*

Plaintiff's complaint survived (in part) the District Court's screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. Dkt. No. 5. The District Court determined Plaintiff had not stated a plausible Eighth Amendment claim against Pollard and Frijas (and those claims were accordingly dismissed with leave to amend), but that he had stated a plausible First Amendment claim against them. *Id.* at 8, 11. The District Court further found Plaintiff plausibly alleged claims under both the First and Eighth Amendments against the Doe defendants. *Id.* at 8-11. The District Court instructed Plaintiff he could either (1) file a "Notice of Intent to Proceed" with his claims as stated, meaning he would pursue only his First Amendment claims against Pollard and Frijas, and his First and Eighth Amendment claims against the Doe Defendants, or (2) file an amended complaint to try to rehabilitate his Eighth Amendment claims against the named defendants. *Id.* at 12. Plaintiff chose the first option. Dkt. No. 6. The District Court then issued a further order making clear that the Eighth Amendment claims against Pollard and Frijas remained dismissed for failing to state a claim. Dkt. No. 7 at 3-4.

After waiving service, Defendants moved to dismiss Plaintiff's original complaint. Dkt. No. 15. While that motion to dismiss was pending, Plaintiff filed his First Amended Complaint. Dkt. No. 26. On December 14, 2022, the undersigned issued a Report and Recommendation recommending the motion to dismiss be denied as moot. Dkt. No. 30. After that Report and Recommendation but before the District Court issued an order adopting it, Plaintiff moved for leave to file his Second Amended Complaint. Dkt. No. 35.

In granting that motion, the Court ordered, among other things, that Plaintiff "must reallege Plaintiff's First Amendment and Eighth Amendment claims as <u>separate</u> counts, and must not purport to allege Eighth Amendment claims against [Pollard and] Frijas, given Plaintiff's voluntary abandonment of those claims." Dkt. No. 41 at 7. On October 19, 2023, Plaintiff filed a complaint that did not comply with the Court's order, leading the undersigned to *sua sponte* strike it. Dkt. Nos. 46, 52. Plaintiff then filed the Second Amended Complaint (the "SAC"), which remains the operative complaint in this action, on November 30, 2023. Dkt. No. 53. In the SAC, Plaintiff named the Doe Defendants as Cepeda, Alfaro, and Bravo-Mancilla. *See generally* Dkt. No. 53.

On January 10, 2024, Defendants moved to dismiss the SAC. Dkt. No. 59. While that motion was pending but before service had been effected on the new defendants, Plaintiff moved again to file an amended complaint. Dkt. No. 65. The undersigned denied that motion without prejudice, explaining that filing an amended complaint before the new parties had entered the case was premature and would likely create undue delay. Dkt. No. 71. On May 17, 2024, Defendants moved to dismiss the SAC, withdrawing their earlier-filed motion to dismiss. Dkt. No. 77. This is the motion currently before the Court.

Between July 1 and July 10, 2024, Plaintiff filed four motions, each seeking permission to file a proposed Third Amended Complaint. The undersigned denied without prejudice Plaintiff's motions, writing that "all parties, and the interests of judicial economy, will be better served by providing the Court an opportunity to issue an order on the merits of Defendants' pending motion to dismiss before any further amendments to Plaintiff's pleadings are considered." Dkt. No. 91 at 6. This Report and Recommendation follows from the Court's conclusion "that it must be given an opportunity to assess the sufficiency of Plaintiff's operative pleading," especially because "the case remains at the pleading stage more than two years after Plaintiff filed suit." *Id.* at 5-6.

B.    <u>The Second Amended Complaint</u>

At the outset, the Court credits Defendants' contention that Plaintiff has violated Court orders related to his pleadings. Dkt. No. 41. Notably, Plaintiff ignored the order

that he "reallege [his] First Amendment and Eighth Amendment claims as separate counts." *Id.* at 7. The SAC asserts a "Violation of 8th and 1st Am. Rights of both state and federal constitution against excessive use of force as retaliation for complaining against staff" and a further "Violation of 8th Amendment for cruel and unusual punishment and . . . delaying medical treatment and care." Dkt. No. 53 at 2-4. Defendants also correctly note that Plaintiff alleges all claims and facts included in the SAC against all Defendants. Dkt. No. 77 at 10 (discussing Dkt. No. 53). These decisions by Plaintiff have unfortunately created ambiguity. But given the requirement to construe *pro se* pleadings liberally, the policy embedded within the Federal Rules of Civil Procedure strongly favoring decisions on the merits where possible, and the fact that Defendants and the Court have enough notice to "frame a responsive pleading" and "understand the claims,"[1] the Court disagrees with Defendants' argument that the SAC should be dismissed outright. The Court summarizes Plaintiff's claims as it understands them below, mindful of its twin mandates to afford Plaintiff "the benefit of any doubt" without supplying "essential elements of the claim that were not initially pled." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

Plaintiff alleges First Amendment and Eighth Amendment claims against Defendants in both their official and individual capacities. Dkt. No. 53 at 1. He alleges that all Defendants (1) retaliated against him in violation of the First Amendment, (2) acted with deliberate indifference to his health and safety in violation of the Eighth Amendment, and (3) used excessive force against him in violation of the Eighth Amendment. *See id.*

The factual allegations in the SAC can be divided into the events leading up to and through the April 15, 2021 incident, and the events that follow. The Court accepts the

---

[1] *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000). Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, footnotes, and parallel reporter citations are omitted from citations.

following allegations in the SAC as true for the purpose of resolving Defendants' motion to dismiss. *Watison*, 668 F.3d at 1112.

### 1. Up to and through April 15, 2021

Plaintiff is a hearing-impaired inmate at RJD. Beginning in October 2020—after six months of being unable to use, or get a working replacement for, his hearing aids—Plaintiff began "complaining and lashing out" at correctional staff because they denied him access to certain medical and mental health services, violated his rights under the Americans with Disabilities Act ("ADA"), and violated prison policies. In March 2021, Plaintiff also started "reporting the ADA violations," which prompted staff to start pushing back against Plaintiff's "complaints and behavior."

On April 15, 2021, Plaintiff had an argument with a building control officer because the officer refused to let Plaintiff read his lips during a conversation. Plaintiff told the officer that he would "talk to the Sgt. at yard time," presumably to report the officer's conduct. An unspecified amount of time later that day, Cepeda closed a cell door on Plaintiff's hand for about ten minutes, refusing to open the door to release Plaintiff's hand. Cepeda also told Plaintiff, "hopefully this will teach you to stop snitching on staff." Bravo-Mancilla and Alfaro watched this incident occur and laughed at Plaintiff; they did nothing to help him get his hand out of the door or to stop Cepeda from hurting him. Plaintiff suffered significant injury to the tendons and muscles in his hand and has required three surgeries on it so far.

### 2. After the April 15 Incident

Plaintiff alleges that he filed a grievance requesting medical attention for his hand, but that no medical care was provided until June 10, 2021, because Frijas and Pollard were trying to "teach Plaintiff a lesson." Confusingly, however, the SAC also details several of Plaintiff's medical appointments that happened on April 15 and the days that followed. Plaintiff alleges, for example, that the day of the incident, a "psytech" washed Plaintiff's hand with saline "even though the skin was broken and finger was swollen like a balloon ready to pop. Plaintiff was told to be a big boy and suck it up." Then, at an appointment

on April 29, 2021, a nurse not wearing a name tag told Plaintiff that if he filed any other grievances, he would not receive medical care. And at a later medical appointment, Dr. John Chau told Plaintiff that he should not file any more grievances if he wanted to receive medical care.

Plaintiff also alleges that he filed a grievance after the April 15 incident complaining about the officers' actions. Plaintiff alleges that Frijas and Pollard again refused to process the grievance, and that they ignored letters that he wrote them relating to the incident, as retaliation. But Plaintiff also alleges that Frijas and Pollard signed a memorandum declaring that the prison had investigated the April 15 incident and determined that some violation of California Department of Corrections and Rehabilitation had occurred. Plaintiff attached this incident report to the SAC; the report explains that a "Locally Designated Investigator" investigated Plaintiff's complaint and determined there was a violation of the prison's policy.

## II.
## **LEGAL STANDARDS**

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). The Court construes a *pro se* plaintiff's pleadings liberally and affords him "the benefit of any doubt." *Watison*, 668 F.3d at 1112. But the plaintiff must still allege with some degree of particularity acts which defendants engaged in that support the plaintiff's claim, and the Court must not "supply essential elements of the claim that were not initially pled." *Bruns*, 122 F.3d at 1257.

A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *Watison*, 668 F.3d at 1112. The Court may consider material which is properly submitted as part of the complaint, such as an attached exhibit or a document incorporated by reference into the complaint, without converting the motion to dismiss into a motion for summary judgment. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). However, the Court "*may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).[2]

## III.
## DISCUSSION

### A. Official Capacity Damages

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (stating that a suit against the state and its correctional agency is barred absent consent). This bar extends to a prisoner's damages claims against individual defendants in their official capacities. *Will*, 491 U.S. at 71 (noting that a suit against an official-capacity defendant "is no different from a suit against the State itself"). The State of California has not consented to this suit. Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to Plaintiff's damages claims against Defendants in their official capacities.

### B. Eighth Amendment Claims Against Pollard and Frijas

Plaintiff's Eighth Amendment claims against Pollard and Frijas are also improper. Dkt. No. 7 at 3-4 (Court order dismissing Plaintiff's Eighth Amendment claims against

---

[2] Accordingly, the Court does not consider what it construed to be Plaintiff's supplemental opposition to the motion to dismiss, filed at Dkt. No. 95.

Pollard and Frijas for failing to state a claim); Dkt. No. 41 at 7 (Court order that Plaintiff "must not purport to allege Eighth Amendment claims against . . . Pollard and Frijas, given Plaintiff's voluntary abandonment of those claims"). It is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to Plaintiff's Eighth Amendment claims against Pollard and Frijas. The Court turns next to Plaintiff's surviving claims.

C. **First Amendment Retaliation Claim**

    1. **Defendants Pollard and Frijas**

As discussed above, Plaintiff's only claim against Pollard and Frijas is for retaliation under the First Amendment. The Court understands Plaintiff to be alleging the same set of facts against both Pollard and Frijas, so it discusses the two of them together. A First Amendment retaliation claim in the prison context has five elements: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and (4) that such action chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff's claim against Pollard and Frijas fails at the first element.

Under Section 1983, a supervisory official is not vicariously liable for the unconstitutional conduct of subordinates. *Wilson v. Johnson*, No. CV 21-8359 PSG (JPR), 2022 WL 2101905, at *3 (C.D. Cal. Jan. 26, 2022) (citing *Iqbal*, 556 U.S. at 676). Rather, a supervisory official may be held liable only if they were "personally involved in the unconstitutional deprivation or a sufficient causal connection existed between their wrongful conduct and the deprivation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A "sufficient causal connection" exists where the supervisor sets "in motion a series of acts by others" or knowingly refuses "to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207-08. "Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient." *Anderson v. Vangerwen*, No. 2:20-CV-0246 KJM DB P, 2023 WL 5806894,

at *2 (E.D. Cal. Sept. 7, 2023) (citing *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Plaintiff alleges three facts in his claim against Pollard and Frijas. First, they "refused to process the 602" that Plaintiff filed after correctional officers crushed his hand in a cell door. Dkt. No. 53 at 3. Second, they "hid the identity of staff" who crushed his hand, "therefore sanctioning their retaliation." *Id.* And third, when multiple medical staff told Plaintiff that he would not receive medical care if he continued to file grievances, Pollard and Frijas "refused to address the issue," their "silence sanction[ing] the retaliation." *Id.* at 4-5.

None of those facts are sufficient to show that either Pollard or Frijas were personally involved in the alleged constitutional deprivation. First, as Defendants correctly note, Plaintiff attached to the SAC a response signed by both Pollard and Frijas regarding a grievance submitted by Plaintiff. *Id.* at 8. The response indicates not only that Frijas processed and conducted an inquiry into Plaintiff's grievance, but also that the result was favorable to Plaintiff. *Id.* ("The inquiry was conducted and completed by a Locally Designated Investigator. Our review indicates that there was a violation of California Department of Corrections and Rehabilitation policy."). The Court need not accept all allegations in the SAC as true to the extent they are contradicted by information contained in the exhibits. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Second, that Pollard and Frijas hid the identities of staff as a form of retaliation is the type of "vague and conclusory allegation" the Ninth Circuit has held insufficient; nothing in the SAC suggests a causal linkage between Pollard and Frijas and the alleged retaliation at issue.[3] And third, even taking as true that multiple medical staff threatened to withhold

---

[3] Plaintiff also contends that Title 15 imposes an affirmative requirement upon Pollard and Frijas to identify the names of the officers involved in the incident. Although Plaintiff does not refer to any particular section of Title 15, the Court presumes him to be invoking section 1044 of Title 15 of the California Code of Regulations, which requires that incident

medical care from Plaintiff, there is likewise no causal connection between their conduct and Pollard or Frijas. Plaintiff has failed to allege any facts showing that Pollard or Frijas "set in motion" this plan to withhold medical care, or that they knew of this plan and failed to prevent it. *Starr*, 652 F.3d at 1207. Because Plaintiff has alleged only facts that are disproven by his own pleading or that are insufficient to show Pollard or Frijas's personal involvement, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to Plaintiff's First Amendment claims against Pollard and Frijas.

### 2. Defendants Bravo-Mancilla and Alfaro

The Court understands Plaintiff to be alleging the same set of facts against Bravo-Mancilla and Alfaro in both his First and Eighth Amendment claims, so it discusses the two Defendants together. Plaintiff's retaliation claim against them fails because it does not allege facts sufficient to show they took an adverse action against Plaintiff *because* of his protected conduct. Plaintiff alleges only that these Defendants "laugh[ed] and refused to instruct [Cepeda] to open the cell door" even though they knew Cepeda was crushing Plaintiff's hand. Dkt. No. 53 at 3. Nothing connects these Defendants' failures to intervene with their desire to retaliate against Plaintiff for his protected conduct. *See Leon v. Celaya*, No. 20-CV-00899-AJB-BGS, 2022 WL 1308123, at *19 (S.D. Cal. May 2, 2022), *aff'd sub nom. Leon v. Celaya*, No. 22-55804, 2024 WL 3983326 (9th Cir. Aug. 29, 2024) ("Despite needing to show that the adverse action was taken out of retaliatory animus to silence and punish the Plaintiff based on his protected conduct, and not for some other reason," there was "nothing in the record which suggests that [the defendant's] alleged failure to intervene was motivated by retaliatory animus."); *Mitchell v. Baeza*, No.

---

reports "shall include the names of the persons involved, a description of the incident, the actions taken, and the date and time of the occurrence." Cal. Code. Regs. tit. 15, § 1044. But even if Pollard and Frijas did not include the names of the staff involved, and even if this constituted an adverse action, Plaintiff has not provided anything more than conclusory allegations that these Defendants' failures to do so were motivated by their retaliatory intent. The claim still fails.

120CV00857NODJHBKPC, 2024 WL 2021861, at *9 (E.D. Cal. Jan. 18, 2024) ("Because Plaintiff does not specify which protected First Amendment conduct prompted [the defendant's] alleged retaliatory acts, however, the Court is unable to infer a causal connection based on the timeline of events."). Plaintiff's retaliation claim as to Mancilla-Bravo and Alfaro is rooted only in speculation, which is insufficient to state a claim. It is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to Plaintiff's First Amendment claim against Mancilla-Bravo and Alfaro.

### 3.   Defendant Cepeda

Plaintiff's retaliation claim against Cepeda is a different story. Plaintiff has properly alleged the elements—adverse action, causation, protected conduct, chilling effect, and failure to reasonably advance a legitimate correctional goal—of a retaliation claim against Cepeda. The Court discusses these in turn.

First, Plaintiff alleges Cepeda crushed his hand in a cell door for about ten minutes, resulting in serious harm and the need for multiple surgeries. Dkt. No. 53 at 3-5. Physically injuring someone is plainly an adverse action. *See, e.g.*, *Anderson*, 2023 WL 5806894 at *8 (finding without discussion that tackling a prisoner against a wall and using "a painful wristlock maneuver" on his hand constitutes an adverse action).

Second, Plaintiff adequately alleges that the protected conduct was a "substantial or motivating factor for the alleged retaliatory adverse actions." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114; *accord Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"). Plaintiff alleges that he had been "reporting" ADA violations to correctional staff between March and April 2021, and that he had been more generally been "complaining" of staff misconduct since October 2020. Dkt. No. 53 at 2. He further alleges that Cepeda crushed his hand in the cell door on April 15, 2021, after Plaintiff threatened to "talk to the Sgt. at yard time"

regarding one of Cepeda's alleged continuing ADA violations. *Id.* Finally, Plaintiff alleges Cepeda told Plaintiff, "hopefully this will teach you to stop snitching on staff." *Id.* at 3. These allegations sufficiently plead that Plaintiff's protected filing of grievances, discussed more fully in the paragraph below, was a "substantial or motivating factor" in the cell door incident. From both the timing of events and Cepeda's statements of retaliatory motive, Plaintiff has sufficiently alleged a causal nexus between his grievances and the adverse action.

Third, Plaintiff alleges he engaged in protected conduct by filing inmate grievances. It is unclear from the SAC whether Plaintiff's alleged reports and complaints were written grievances or verbal discussions, but the distinction "is of no constitutional significance." *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017). Courts have consistently held that oral complaints about prison conditions are entitled to First Amendment protection and can serve as the basis for a retaliation claim. *See Yescas v. McCourt*, No. 3:23-CV-00106-TWR-AHG, 2024 WL 3614672, at *10 (S.D. Cal. July 30, 2024) (collecting cases). "Filing or submitting a grievance, complaint, or lawsuit about prison conditions or alleged constitutional violations is protected conduct." *Entler*, 872 F.3d at 1039. This is what Plaintiff alleges happened here.

Fourth, Plaintiff has alleged enough facts to show that the harm he experienced "would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568-69. A plaintiff who fails to specifically allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is "more than minimal." *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989); *see also Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("Since harm that is more than minimal will almost always have a chilling effect, alleging harm *and* alleging the chilling effect would seem . . . to be no more than a nicety."). Here, Cepeda allegedly closed a cell door on Plaintiff's hand for about ten minutes and said, "hopefully this will teach you to stop snitching on staff." Dkt. No. 53 at 2-3. Not only is crushing a prisoner's hand a "more than minimal" harm, but Cepeda's alleged statement could reasonably be

understood as a threat to inflict pain on Plaintiff should he continue to "snitch," which would deter an ordinary person from engaging in protected speech.

Fifth, Plaintiff alleges that the hand crushing occurred after he had a verbal disagreement with Cepeda. *Id.* at 2. Furthermore, the response attached as Exhibit A shows that even the prison determined the incident to violate California Department of Corrections and Rehabilitation policy. *Id.* at 8. On these facts, Plaintiff has adequately alleged that the use of force by Cepeda did not serve any legitimate penological purpose.

It is therefore **RECOMMENDED** that Defendants' motion to dismiss be **DENIED** as to Plaintiff's First Amendment claim against Cepeda.

D. **Eighth Amendment Excessive Force Claim**

1. **Defendant Cepeda**

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment." *Hudson v. McMillian*, 503 U.S. 1, 4 (1992). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. In making this determination, courts typically consider "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). But "where there is no need for force, any force used is constitutionally unreasonable." *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001); *see also Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991) (noting there is no legitimate need to use any force against an inmate who is neither violating prison rules nor reasonably believed to pose a security threat); *Neely v. Ruffin*, No. 115CV00197LJOSABPC, 2016 WL 4594766, at *3 (E.D. Cal. Sept. 2, 2016) ("The gratuitous use of force by a correctional officer in the absence of any need to use force supports a claim for relief under the Eighth Amendment.").

Here, Plaintiff alleges that Cepeda deliberately crushed his hand in a cell door because he said he was going to report Cepeda to the sergeant at yard time. Threatening to complain about prison staff does not violate prison rules, nor does it give rise to the belief that Plaintiff may have posed a security threat. *See Felix*, 939 F.2d at 702. Therefore, Plaintiff's allegations are sufficient to state an Eighth Amendment excessive force claim against Cepeda. *See Stewart v. Ayala*, No. CV 21-9638 RGK (AS), 2023 WL 2993042, at *2 (C.D. Cal. Mar. 8, 2023) (denying motion to dismiss excessive force claim where correctional officer closed a cell door on the plaintiff's head); *Cathy v. Palma*, No. 322CV01565GPCJLB, 2023 WL 322495, at *2 (S.D. Cal. Jan. 19, 2023) (finding, at the screening stage, that the plaintiff stated an excessive force claim where correctional officer deliberately smashed the plaintiff's arm in the cell door). It is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive force claim against Cepeda be **DENIED**.

### 2. Defendants Bravo-Mancilla and Alfaro

A liberal construction of Plaintiff's SAC suggests that his excessive force claim is also brought against Defendants Bravo-Mancilla and Alfaro, who allegedly knew Cepeda was using excessive force against Plaintiff but did not stop him. An officer can violate an inmate's constitutional rights by failing to intervene to stop other officers from using excessive force. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). An officer is subject to liability under a failure-to-intervene theory only if they had enough time to observe what was happening and to intervene in the conduct but failed to do so. *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). Plaintiff's factual allegations support such a claim against Bravo-Mancilla and Alfaro. He alleges the two Defendants "just laugh[ed] and refused to instruct the control officer Cepeda . . . to open the cell door, just stood watching and laughing." Dkt. No. 53 at 3. He also alleges that his hand was stuck in the cell door for about ten minutes, which would have given Bravo-Mancilla and Alfaro time to intervene. Accepting Plaintiff's allegations as true, as the Court must on a motion to dismiss, the Court finds Plaintiff has sufficiently stated an Eighth Amendment

excessive claim against Bravo-Mancilla and Alfaro. Therefore, it is **RECOMMENDED** that Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive force claim against Bravo-Mancilla and Alfaro be **DENIED.**

E.   **Eighth Amendment Deliberate Indifference Claim**

Finally, Plaintiff alleges that Cepeda, Bravo-Mancilla, and Alfaro "refused to give him medical treatment and care." *Id.* The Court construes this as an Eighth Amendment deliberate indifference claim. Deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The indifference must be substantial; mere "indifference, negligence, or medical malpractice will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). Even gross negligence is not sufficient to establish deliberate indifference to a serious medical need. *Wood v. Housewright*, 00 F.2d 1332, 1334 (9th Cir. 1990). Deliberate indifference may be manifested in two ways. "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

Plaintiff has not alleged facts sufficient to show deliberate indifference under either theory with respect to Cepeda, Bravo-Mancilla, or Alfaro. Plaintiff devotes multiple paragraphs of the SAC to the ways in which Pollard and Frijas allegedly delayed and interfered with his medical treatment, but the SAC contains only two sentences arguably connecting Cepeda, Bravo-Mancilla, and Alfaro to a deliberate indifference claim. First, the SAC alleges they "refused to give [Plaintiff] medical treatment and care." Dkt. No. 53 at 3. Second, "the April 15, 2021 . . . hand crushing and denial of medical treatment was a retaliatory act." *Id.* at 5. Although the pleading standard is low, and lower still for *pro se* plaintiffs, Plaintiff must allege with some degree of particularity acts which defendants engaged in that support the plaintiff's claim, and the Court must not "supply essential elements of the claim that were not initially pled." *Bruns*, 122 F.3d at 1257. The

allegations in support of Plaintiff's deliberate indifference claim are too vague and conclusory to survive even at the motion to dismiss stage. It is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED** as to Plaintiff's Eighth Amendment deliberate indifference claims against Cepeda, Bravo-Mancilla, and Alfaro.

### F. Leave to Amend

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). A district court may, however, deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). "A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

One need only look at the multiple pages of procedural history the Court must devote to each new order it issues to understand that this case, filed in February 2022, is one where even the "extreme liberality" required by Rule 15 does not justify giving Plaintiff leave to amend. As discussed above, Plaintiff has failed to comply with multiple Court orders requiring him to modify his complaint. And although the Court must not consider anything outside the SAC for the purposes of resolving the motion to dismiss, it is not so constrained in its futility analysis. Plaintiff begins his supplemental opposition to the motion to dismiss by all but promising to the Court that, should he be given leave to amend, he will continue to plead the way he wants. *See* Dkt. No. 95 at 1 ("Until the District Judge accepts the U.S. Magistrate Judge, the Plaintiff is not required to assure the SAC meet[s] the 9-11-23 order, because it was challenged."); Dkt. No. 83-1 (Plaintiff proposing a Third Amended Complaint and pledging to "meet Rule 8 and 10 and the Court deficiencies as [outlined by]

the Court's September 11, 2023 Order," but continuing to combine First and Eighth Amendment causes of action). Because of the undue delay, repeated failure to cure deficiencies by previously allowed amendments, and the apparent futility of future amendment, the undersigned **RECOMMENDS** that dismissal be without leave to amend.

## IV.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court issue an Order:

(1) Adopting this Report and Recommendation in its entirety and

(2) Granting in Part and Denying in Part Defendants' Motion to Dismiss [Dkt. No. 77], holding that:

(A) Plaintiff may proceed on his First Amendment retaliation claim against Cepeda only;

(B) Plaintiff may proceed on his Eighth Amendment excessive force claim against Cepeda, Bravo-Mancilla and Alfaro only; and

(C) all other claims against all other defendants are dismissed without leave to amend.

**IT IS HEREBY ORDERED** that any objection to this Report and Recommendation must be filed with the Court and served on all parties by **December 30, 2024**. The document should be titled "Objections to Report and Recommendation." Failure to timely object may result in a waiver of the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: December 11, 2024

*David Leshner*

Hon. David D. Leshner
United States Magistrate Judge